Richmond.

KIRBY V. BOOKER, GUARDIAN, ETC.

January 24, 1918.

1. EXECUTORS AND ADMINISTRATORS—*Debts of Decedent—Sale of Realty to Pay Debts.*—The personal estate of an intestate is the primary fund for the payment of his debts, and until the amount thereof has been ascertained it cannot be told to what extent it will be necessary to resort to the real estate. The lands of a decedent ought not to be sold for the payment of his debts until the court has first ascertained the debts of the decedent and their relative priorities, if any, and the amount of his personal estate applicable thereto. The object of the rule is that the land shall be sold under such conditions as will realize the best price therefor. The rule is well settled that it is error to decree a sale of land for the payment of the liens thereon until there has first been an account of such liens and their relative priorities, if any, and the reason of the rule is equally applicable to the sale of the lands of a decedent for the payment of his debts.

2. EXECUTORS AND ADMINISTRATORS—*Debts of Decedent—Sale of Realty to Pay Debts—Case at Bar.*—A decree was entered for the sale of the real estate of a decedent in a creditor's suit to subject the real and personal estate of the decedent to the payment of his debts. The suit was instituted by an attorney at law, suing on behalf of himself and all other creditors of the decedent, to enforce the collection of a claim for attorney's fees. The only heir of the decedent was a daughter five years of age. The suit was referred to a commissioner to take an account of the real estate and personal estate of the decedent, and an account of the debts, liens and demands against the estate of the decedent. The report of the commissioner did not furnish definite information as to either the assets or liabilities of the decedent and therefore the record was in no condition to enable the court below to enter a decree for sale.

3. EXECUTORS AND ADMINISTRATORS—*Debts of Decedent—Sale of Realty to Pay Debts—Case at Bar—Adequate Price.*—It was insisted in the instant case that the sale was a fair one, the price adequate and that the sale should not be set aside for the slight incompleteness of the commissioner's report; and also

that the debts were far in excess of the value of the land and in no event could the heir be benefited, and that no creditor was complaining. However, one of the exceptions to the report of the sale was "an utterly inadequate price" obtained for the property, upon which the lower court refused to pass. Under these circumstances the Supreme Court of Appeals cannot tell whether the land sold for a fair price or not. The only heir of the decedent is an infant of very tender years and cannot put in an upset bid for the land, no account of the personal estate of the decedent has been taken, and no accurate report has been made of debts due by the defendant, and of the liens on his real estate. For these reasons, the decree of the circuit court setting aside the sale was affirmed.

Appeal by a purchaser of land at a judicial sale from a decree of the Circuit Court of Halifax county, setting aside the sale.

*Affirmed.*

The opinion states the case.

*Easley & Bouldin,* for the appellant.

*John Martin,* for the appellee.

BURKS, J., delivered the opinion of the court.

This is an appeal by a purchaser of land at a judicial sale from a decree setting aside the sale. Several exceptions were filed to the report of sale, but the circuit court passed on only one of them, and, as we think, it properly set aside the sale, it will be unnecessary to notice the other exceptions. The exception sustained in the trial court was because "there was no complete account of liens against the lands sold, and it was error to decree a sale of said lands without such account."

The suit in which the decree was entered was a creditor's suit to subject the real and personal estate of a decedent

to the payment of his debts. It was instituted by R. I. Overby, an attorney at law, suing on behalf of himself and all other creditors of C. G. Kirby, the day after the decedent's death, to enforce the collection of a claim for attorney's fees. The only heir of the decedent was a daughter five years of age, who, together with the sheriff of the county to whom the estate seems to have been very promptly committed, was made a party defendant to the bill. As soon as the suit was matured for hearing, it was referred to a commissioner to take the following accounts:

"1st. An account of the real estate and personal estate owned by the said decedent, C. G. Kirby, at the time of his death.

"2nd. An account of the debts, liens and demands against the estate of the said decedent."

In response to this order of reference, the commissioner returned a report in which he set out specifically the various parcels of real estate owned by the decedent and the character of his estate therein. As to the personal estate he says: ·

"I herewith file a report of the administrator, L. W. Rice, sheriff of Halifax county, and as such administrator of the decedent, which shows that the value of the personalty belonging to the estate of said decedent is $306.75.

"It is evident that the personal property is insufficient to satisfy the debts proved against the estate of the decedent."

But no such report is filed, and no account of the administration is taken. There is copied into the record an "appraisement of personal property of C. G. Kirby, deceased, "showing that the tangible personal property of the decedent was appraised at $306.75, just the amount stated by the commissioner, but this appraisement takes no notice of intangible property. Just how much of this there was we have no means of knowing, but the bill refers to a note

of S. A. Kirby for $183.00, which was secured by deed of trust and had been assigned to the decedent, and prays that the trustee "be allowed and directed to execute said deed of trust." It is certain that the report of the commissioner did not accurately inform the court of the amount or value of decedent's personal estate.

In the report of debts of the decedent, under the head of specific liens, the commissioner makes this statement: "On remainder in tract of 222 acres. It is recited in deed from Susan A. Kirby to C. G. Kirby, that this land is subject to the payment of a debt of $350.00 due by Susan A. Kirby to Jno. W. Fitzgerald and a debt of $40.00 to J. T. Cole. The above charges, while not debts of the decedent, are probably charges on the land."

There should have been no uncertainty whatever about these charges. It was the duty of the commissioner to ascertain whether or not these debts had been paid, and to have informed the court on that subject. If they were not paid he should have ascertained the date from which they bore interest, so that the court and all parties might know the extent of the liability of the estate of the decedent. The report of the commissioner did not furnish definite information as to either the assets or liabilities of the decedent and the record was in no condition to enable the court to enter a decree for sale.

No exception was filed to the report of the commissioner on that account, but attention is called to the fact that while the commissioner says that he returns with his report "certain accounts and bonds filed with him by creditors of the decedent, whose debts he has reported," no such accounts and bonds appear in the record. The complainant in his bill says, "that said decedent's estate is indebted to your complainant in the sum of $150.00, evidenced by an open account," but no such account is to be found anywhere in the record, nor is there any proof of the value of the serv-

ices rendered.  H. E. Kirby, a non-professional witness and a brother of the deceased, testifies that certain professional services were rendered the deceased by the complainant, but he makes no effort to fix a value thereon, even if he were competent to do so.  The same witness testifies that the decedent owed Susan A. Kirby rent for five years at $150.00 per year, by contract. But no such contract appears in the record, and whether it was verbal or written we have no means of knowing.  If it was verbal, probably a large part of it was barred by the act of limitations which it was the duty of the administrator to plead.  Every dollar of these debts may be justly due and owing, but the record does not show it with that clearness and certainty which should be made to appear before a decree for a sale is entered.  This is due as well to the creditors themselves as to the decedent's estate.

The personal estate of an intestate is the primary fund for the payment of his debts, and until the amount thereof has been ascertained it cannot be told to what extent it will be necessary to resort to the real estate.  The lands of a decedent ought not to be sold for the payment of his debts until the court has first ascertained the debts of the decedent and their relative priorities, if any, and the amount of his personal estate applicable thereto.  The object of the rule is that the land shall be sold under such conditions as will realize the best price therefor.  The rule is well settled that it is error to decree a sale of land for the payment of the liens thereon until there has first been an account of such liens and their relative priorities, if any, and the reason of the rule is equally applicable to the sale of the lands of a decedent for the payment of his debts.  *Coles* v. *McRae,* 6 Rand. (27 Va.) 644; *Horton* v. *Bond,* 28 Gratt. (69 Va.) 815; *Shultz* v. *Hansbrough,* 33 Gratt. (74 Va.) 567; *Fidelity Loan Co.* v. *Dennis,* 93 Va. 504, 25 S. E. 546; *Bristol Iron Co.* v. *Caldwell,* 95 Va. 47, 27 S. E. 838; *Bank*

v. *Trigg Co.*, 106 Va. 327, 56 S. E. 158. As said in the last mentioned case, "the principle on which these decisions are founded is 'that a sale without first removing a cloud from the title and adjusting and settling rights in dispute, and without previously ascertaining and determining the liens and encumbrances, the amounts and priorities, tends to a sacrifice of the property as to creditors by discouraging them from bidding when they probably would have bid for the protection of their own interests if the rights of all parties had been previously ascertained and fixed with reasonable certainty.' It is first to be observed that the rule applies only to the sale of real estate; it has no application to the sale of personal property."

In the instant case there are both liens and unsecured debts and the rule applies with full force.

It has been earnestly insisted before us that the sale was a fair one, the price adequate and that the sale should not be set aside for the slight incompleteness of the commissioner's report. It is also said that the debts are far in excess of the value of the land and in no event could the heir be benefited, and that no creditor is complaining. It is sought to bring this case within the principle of *Utterbach* v. *Mehlenger*, 86 Va. 62, 9 S. E. 479. In that case the land sold for a *"high price"* and did not bring enough to pay more than one-half of the liens proved, and the court says, "there is nothing in the proceedings which could by any possibility be prejudicial to the rights of the appellants." This cannot be said of the instant case. One of the exceptions to the report of sale was "an utterly inadequate price" obtained for the property. Affidavits were filed by the purchaser to show the adequacy of the price paid, but this exception was not passed upon by the trial court. On this subject, the decree appealed from states, "there being a misunderstanding of counsel as to the time for considering the question of adequacy of price of the lands sold, the

court refuses to pass upon this ground of exception to the report of the special commissioner at this time." Under these circumstances we cannot tell whether the land sold for a fair price or not. The only heir of the decedent is an infant of very tender years and cannot put in an upset bid for the land, no account of the personal estate of the decedent has been taken, and no accurate report has been made of debts due by the decedent, and of the liens on his real estate. For these reasons, the decree of the circuit court is affirmed.

*Affirmed.*